**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **R.M.-1 and R.M.-2**

**No. 22-0087** (Ohio County 20-CJA-97 and 20-CJA-98)

**MEMORANDUM DECISION**

Petitioner Mother J.M., by counsel Peter P. Kurelac III, appeals the Circuit Court of Ohio County's January 4, 2022, order terminating her parental rights to R.M.-1 and R.M.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Katica Ribel, filed a response in support of the circuit court's order. The guardian ad litem, Joseph J. Moses, filed a response on the children's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for an improvement period and in terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2020, the DHHR filed a child abuse and neglect petition alleging that petitioner exposed the children to domestic violence. The DHHR referenced an incident that occurred earlier in October of 2020, when the children were at the father's house and petitioner appeared unannounced. According to the DHHR, witnesses believed that petitioner was under the influence of controlled substances when she appeared at the home. Petitioner allegedly dragged then five-year-old R.M.-1 and two-year-old R.M.-2 to her car and placed them in the vehicle without age-appropriate car seats. The father and his daughter, A.G., attempted to

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, as the children share the same initials, we refer to them as R.M.-1 and R.M.-2, respectively, throughout this memorandum decision.

remove the children from the vehicle because they believed petitioner was intoxicated and unable to drive. At that point, petitioner allegedly "began punching and striking [A.G.] and [the father] in the head and face." The pair managed to remove the children from the car. Then, petitioner produced an aluminum baseball bat from inside her vehicle and "began swinging it at everyone." A.G. was struck multiple times, "at least twice in the head;" the father was struck in the right hand; and R.M.-1 was also struck in the head. Petitioner then fled the scene. The DHHR alleged that law enforcement responded to the scene and later charged petitioner with two counts of malicious wounding. R.M.-1 was treated for a concussion following the incident.

The DHHR also alleged that petitioner had a significant criminal history, including arrests or convictions for endangering children in 2010 "in relation to her oldest child;" assault and disorderly conduct in 2012; disorderly conduct in 2014; endangering children in 2016, which involved R.M.-1 "and the drug task force;" and theft in 2016 and 2019.[2] The DHHR alleged that petitioner was required to undergo drug treatment in 2016 due to the endangering children charge. Finally, the DHHR alleged that petitioner had a child protective service history in Ohio. The DHHR concluded that despite petitioner's attempts to remedy her substance abuse issues, she continued to endanger the children. Following the filing of the petition, the DHHR placed the children with the then-nonabusing father.

In February of 2021, the circuit court held an adjudicatory hearing. The DHHR presented testimony from the father, his girlfriend, A.G., law enforcement officers, and a DHHR worker. Petitioner presented the testimony of two witnesses but did not testify herself. Upon that evidence, the circuit court found that while it could not find that petitioner was intoxicated when she appeared at the father's home to take R.M.-1 and R.M.-2, the father and A.G. reasonably believed petitioner was impaired and thought it was necessary to prevent her from leaving the residence with the children. It further found that petitioner "employing blunt force to [A.G.'s] head with an object was not justified and was an outrageous use of force against a [sixteen]-year-old girl, and both young children [R.M.-1 and R.M.-2] were subjected to this." The court then found that petitioner did not intentionally strike R.M.-1 with the baseball bat, but "rather did so with gross negligence." Accordingly, the circuit court adjudicated the children as neglected children and petitioner as an abusing parent based upon "domestic violence at this time and throughout [the father and petitioner's] relationship." The court did not adjudicate petitioner for drug use.

Thereafter, petitioner moved for a post-adjudicatory improvement period, and the circuit court held two hearings on the motion in May of 2021. At the first hearing, petitioner testified. However, on cross-examination, petitioner asserted her Fifth Amendment right against self-incrimination regarding the incidents that occurred in October of 2020, for which she had been indicted on two counts of malicious wounding. The circuit court recessed to research the issue. When it reconvened later in May of 2021 for a subsequent hearing, the court explained to petitioner that her testimony could not be used against her at a subsequent criminal trial except

---

[2]Petitioner's oldest child was not included as an infant respondent to these proceedings and is not at issue on appeal.

for perjury or false swearing, consistent with West Virginia Code § 57-2-3. The circuit court instructed petitioner that she would either be subject to cross-examination regarding the events that occurred in October of 2020 or her direct examination testimony would be stricken from the record. Petitioner rescinded her Fifth Amendment assertion and testified.

During cross-examination, petitioner denied that she struck A.G. or R.M.-1 with the baseball bat. Petitioner testified that the father contacted her earlier in the day and asked her to pick up her two sons from his home. According to her testimony, when she arrived, petitioner and the father were congenial and she began loading the children and their possessions into the car. Suddenly, the interaction "went south." Petitioner claimed that she was physically assaulted by the father and, after a struggle, returned to her vehicle where the children were already in their car seats. According to petitioner, A.G. entered her vehicle, where the two of them struggled over the baseball bat. During the struggle, petitioner alleged that A.G. accidentally struck herself in the mouth with the bat. The court found that petitioner's testimony did not conform with the other testimony in the proceedings, noting that A.G. was struck twice in both the mouth and head.

The court also heard testimony from petitioner's treating psychologist, who testified that petitioner informed her the father had "taken [the children] and [would] not give them back." According to the psychologist, petitioner did not admit that she struck A.G. with a baseball bat and did not indicate that she needed treatment for anger management. The psychologist testified that petitioner presented herself as nonviolent and that she was treating petitioner for her past traumas. Based on this testimony, the court found that petitioner had "extremely poor insight into her own deficiencies," as evidenced by her failure to admit to her mental health or anger issues." Ultimately, the court denied petitioner's motion for a post-adjudicatory improvement period.

The circuit court held two dispositional hearings in October of 2021, and petitioner moved for a post-dispositional improvement period. The DHHR presented testimony from the children's therapist, who explained that he was treating the children for their physically aggressive behaviors. The therapist testified that then-six-year-old R.M.-1 was more aggressive than R.M.-2, but R.M.-2 was beginning to show signs of such behavior. According to the therapist, R.M.-1 was "incredibly angry," stated he hated petitioner and did not want to see her, and further stated that he felt angry because petitioner struck him in the head with a baseball bat. The therapist also stated that R.M.-1 recounted instances when petitioner abused controlled substances in his presence and incidents of domestic violence between his parents. Further, R.M.-1 expressed "a lot of apprehension" in visiting petitioner, which he did not express when visiting the father. R.M.-1 stated that he would shoot himself in the head or jump off a building if returned to petitioner's care. Ultimately, the therapist opined that both children experienced "extreme neglect in their own way" and "advise[d] against returning [the children] to their mother [petitioner]" based on the amount of trauma that the children had experienced in their lives thus far.

The DHHR also called a child protective services ("CPS") worker, who had been assigned to petitioner's case since October of 2020. The worker testified that he had investigated petitioner's relationship with her older son, R.T., who had been removed from petitioner's care by Ohio child protective services. The worker described petitioner's CPS history, dating back to

3

2010. Although R.T. was still a minor, he was not in petitioner's care and was living with a grandparent when the petition was filed. The CPS worker further testified that the cause of R.T.'s removal related to petitioner's substance abuse and physical violence with the child. The worker stated that Ohio CPS had attempted to intervene and improve petitioner's parenting beginning in 2010. The worker then testified that the West Virginia DHHR recommended termination of petitioner's parental rights in the instant case because petitioner failed to accept responsibility for striking A.G. and R.M.-1 with the baseball bat. The DHHR later clarified that petitioner had acknowledged prior incidents of domestic violence in the presence of the children and past substance abuse issues. However, the worker emphasized that petitioner continued to deny the incident alleged in the petition, specifically striking A.G. and R.M.-1 with the baseball bat. Additionally, the worker confirmed that petitioner submitted 102 drug screen samples, resulting in two tests that were positive for alcohol and negative results for the remainder.

Petitioner presented testimony from her psychologist and testified herself. Petitioner testified that she entered a guilty plea to battery, pursuant to a plea agreement, that resolved the criminal charges arising from the incident where she struck A.G. with a baseball bat. Petitioner went on to admit that she "lashed out" during the incident and struck the father. However, petitioner continued to assert that she struggled with A.G. over the baseball bat and "[A.G.] got hit." When asked whether petitioner could parent the children, she admitted that she was not capable of parenting the children if they were returned to her that day. Petitioner stated that she started therapy when she first became involved with Ohio CPS at the age of sixteen and acknowledged that the conditions existing at that time had not been remedied. The psychologist testified that petitioner requested assistance with anger management following the May of 2021 hearing and that petitioner already knew much of the content presented in the program.

Upon this evidence, the circuit court found that petitioner was not capable of parenting her children and that she acknowledged her parental deficiencies continued to exist one year after the filing of the petition. The court noted that petitioner's testimony was "perplexing" and concluded that petitioner failed to take responsibility "for the acts which this [c]ourt did [find], during the Adjudicatory Hearing, transpired on the date in question." The court further considered that petitioner "was put on notice in 2010 [during her Ohio CPS involvement] to get anger management [counseling] and therapy, but it [was] not effective as it [was] not addressing what she needs to treat." The circuit court found that the children had been "severely damaged" due to the domestic violence that occurred. Ultimately, the circuit court determined that, given petitioner's lack of insight and failure to accept responsibility, a post-dispositional improvement period was not warranted nor was an alternative disposition under West Virginia Code § 49-4-604(c)(5). The court found that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future and that termination of petitioner's parental rights was necessary for the children's welfare. Therefore, the circuit court terminated petitioner's parental rights by its January 4, 2022, order.[3]

---

[3]The DHHR amended the petition to include allegations of abuse and neglect against the father. According to the parties, he continues to participate in an improvement period. The children's permanency plan is reunification with the father.

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her motions for improvement periods and terminating her parental rights. She asserts that the circuit court's finding that she failed to acknowledge the conditions of neglect and abuse is clearly erroneous. In petitioner's view, she acknowledged that domestic violence and her mental health issues were conditions that led to the abuse and neglect of the children, and she admitted that she "lashed out" during the incident that led to the filing of the petition. We find petitioner is entitled to no relief.

In order to be granted an improvement period under West Virginia Code § 49-4-610, the parent must first "demonstrate[], by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period and the court further makes a finding, on the record, of the terms of the improvement period." *See* W. Va. Code §§ 49-4-610(B) & (C). "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015); *see also In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002) (holding that a circuit court has the discretion to deny a motion for an improvement period when no improvement is likely). Critically,

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted).

Here, the record supports the circuit court's finding that petitioner did not acknowledge the conditions of neglect or abuse. Throughout the proceedings, petitioner denied that she used a baseball bat to strike A.G. or R.M.-1, until finally, at the dispositional hearing, petitioner admitted that she "lashed out" and struck the father and A.G. The circuit court found this testimony "perplexing" and, upon considering prior evidence in the proceedings, ultimately determined that petitioner failed to acknowledge the conditions of abuse and neglect. As we have previously held, "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). Upon our consideration of the record presented, we find no clear error in the circuit court's determination that petitioner failed to acknowledge the conditions of neglect and abuse and that an improvement period was not warranted.[4]

Further, we find no error in the circuit court's termination of petitioner's parental rights to the children. Pursuant to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children. West Virginia Code § 49-4-604(d) provides that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when the "abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." The evidence detailed above fully supports such a finding based upon petitioner's failure to acknowledge the conditions of abuse and neglect. Moreover, the children, especially R.M.-1, detailed an extremely negative relationship with petitioner, to the extent of self-harm if returned to her care. This is compelling evidence that termination was necessary for the children's welfare. Accordingly, we find no error in this regard.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 4, 2022, order is hereby affirmed.

Affirmed.

**ISSUED**: August 31, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison

---

[4]Petitioner substantially relies on this Court's recent decision *In re S.J.*, No. 18-0243, 2018 WL 6119793 (W. Va. Nov. 21, 2018) (memorandum decision), wherein this Court reversed a circuit court's termination of a mother's rights because its finding that the mother failed to acknowledge the conditions of neglect or abuse was not supported by the record. However, the facts are distinguishable and unpersuasive.

Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn